The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner, with some modification. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law and ultimate order.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer on 6 December 1996.
3. ESIS was the carrier at risk on 9 December 1996.
4. Plaintiff's average weekly wage will be determined by an Industrial Commission Form 22.
5. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
6. Plaintiff's medical records regarding this claim were admitted into evidence following the hearing before the Deputy Commissioner.
7. The issues to be determined are whether plaintiff sustained a compensable injury to his back on 9 December 1996, arising out of and in the course of his employment; and, if so, what, if any, benefits is he entitled? If plaintiff is entitled to benefits, is the defendant-employer entitled to a credit against temporary total disability benefits paid to plaintiff?
***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. On 9 December 1996, plaintiff was a 37-year old male employed by defendant-employer in a supervisory position as a group leader. Plaintiff's responsibilities included training employees and maintaining dye cast machines.
2. On 9 December 1996, plaintiff was working with Allen King on the dye cast machine. The plaintiff picked up an eight foot bar weighing approximately fifty to sixty pounds. As plaintiff went to the foot of the machine, he stepped on a grate in the floor that had not been replaced properly. Plaintiff then fell to the floor and experienced a sharp pain at the base of his back. Mr. King witnessed the fall and helped plaintiff get up.
3. Plaintiff normally worked the third shift from 12:10 a.m. to 8:00 a.m. Plaintiff's work-related fall on 9 December 1996 occurred approximately thirty minutes into his shift. Plaintiff originally thought he had only pulled a muscle. Plaintiff finished his shift, but was in constant pain.
4. On 10 December 1996, plaintiff reported to work and informed Robert Haddock, his supervisor, about the fall on the grate the previous night. Although still in pain, plaintiff continued working.
5. The plant was scheduled to shut down from 19 December 1996 through 1 January 1997 for the holidays.
6. Plaintiff continued to work until the plant shut down 19 December 1996. However, he was still experiencing low back pain and plaintiff did not do any lifting. By 19 December 1996, plaintiff's lower back pain had progressed into his right leg. The leg pain began approximately three to four days after plaintiff's work-related fall on 9 December 1996.
7. Between 19 December 1996 and 25 December 1996, the plaintiff only rested. The plaintiff's wife applied ointment to his back, but the pain increased.
8. On 26 December 1996, the plaintiff decided to go deer hunting with some friends. Plaintiff was an avid deer hunter and had not been hunting during the annual plant shut down. The plaintiff and his friends rode a four-wheel ATV on cleared trails to deer stands that were already in place. Plaintiff climbed an eight foot ladder, shot a low-powered rifle and missed a deer. As a result of continuing to experience pain in his back, plaintiff decided to return early from hunting and sought treatment at the Sanford Medical Group. Plaintiff went to his HMO provider rather than go through defendant-employer because he did not know the procedure during a plant shut down.
9. While hunting on 26 December 1996, plaintiff did not suffer any slip, trip or fall; therefore, there was no independent intervening event that caused any aggravation to plaintiff's back condition.
10. Plaintiff gave Dr. Gallup at Sanford Medical Group a history of pain in his back since falling through a grate and increased pain while deer hunting. The doctor on 26 December 1996 diagnosed plaintiff with low back strain, but was unable to definitely relate the strain to work. Plaintiff was given medications for pain.
11. Plaintiff's pain continued to increase and, as a result of his 9 December 1996 work-related fall, he was unable to return to work when the plant re-opened on 2 January 1997. The plaintiff again called Robert Haddock to let him know his back pain had increased and he was unable to return to work.
12. On 7 January 1997, plaintiff sought treatment from Dr. Fletcher, who referred him for a MRI on 8 January 1997. Plaintiff's MRI revealed a herniated disc at L4-5 with a free fragment of disc material compressing the L4 nerve root.
13. Plaintiff saw Dr. Michael Paré, a neurosurgeon, on 9 January 1997. Plaintiff underwent an L4-5 diskectomy and removal of extruded disc on 16 January 1997. Plaintiff's ruptured disc and surgery were causally related to the injury by accident on 9 December 1996.
14. As a result of plaintiff's work-related fall on 9 December 1996, plaintiff was unable to work or earn any wages from 2 January 1997 through 4 March 1997.
15. Plaintiff returned to work for defendant-employer on 4 March 1997 on light-duty. Plaintiff continued on light-duty for three to four weeks. Plaintiff then returned to full duty.
16. During the time plaintiff was out of work, he received short-term disability benefits equal to sixty percent (60%) of his weekly wage. The short-term disability benefits came from an employer-funded plan.
17. As of 28 May 1997, plaintiff had reached maximum medical improvement with a ten percent (10%) rating to his back as a result of the injury sustained on 9 December 1996.
18. Pursuant to an Industrial Commission From 22, plaintiff's average weekly wage on 9 December 1996 was $676.60, resulting in a compensation rate of $451.08.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 9 December 1996 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As a result of his compensable injury on 9 December 1996, plaintiff is entitled to temporary total disability benefits from 2 January 1997 through 4 March 1997, at his compensation rate of $451.08 per week. Defendants are entitled to a credit in the amount of short-term disability benefits paid to plaintiff pursuant to an employer-funded plan. N.C. Gen. Stat. §§ 97-29
and 97-42.
3. Plaintiff is entitled to have defendants provide all medical treatment arising from this injury by accident to the extent it tends to effect a cure, give relief or lessen plaintiff's disability. The approved medical treatment includes the surgery performed by Dr. Paré. N.C. Gen. Stat. § 97-25.
4. As a result of his compensable injury on 9 December 1996, plaintiff is entitled to permanent partial disability compensation for the ten percent (10%) permanent partial disability rating to his back. N.C. Gen. Stat. § 97-31.
***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee herein approved, the defendants shall pay temporary total disability benefits to the plaintiff at a compensation rate of $451.08 per week for the period from 2 January 1997 through 4 March 1997. Said amount shall be payable in a lump sum and subject to a credit for short-term disability benefits paid to plaintiff during this period.
2. Defendants shall pay permanent partial disability compensation benefits to the plaintiff at the rate of $451.08 per week for 30 weeks for the ten percent (10%) permanent partial disability rating to his back.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff in paragraphs one and two of this AWARD is hereby approved, to be deducted from the sums due plaintiff and paid directly to plaintiff's counsel.
4. Defendants shall pay all medical expenses incurred by plaintiff as a result of his compensable injury on 9 December 1996 when bills for the same have been submitted pursuant to approved Industrial Commission procedures.
5. Defendants shall pay the costs, including an expert witness fee of $400.00 for the deposition fee of Dr. Paré. This fee shall be paid directly to plaintiff's counsel.
This the ___ day of November 1999.
S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________ CHRISTOPHER SCOTT COMMISSIONER
S/_____________ DIANNE C. SELLERS COMMISSIONER
LKM/jth